UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re:                                                                                    Case No. 8-19-70230-reg

Hector Benitez,                                                                  Chapter 7

                              Debtor.

------------------------------------------------------------------X

# **DECISION**

Before the Court is a motion by the chapter 7 trustee, Marc A. Pergament, (the "Trustee") for an order approving the retention of Weinberg, Gross & Pergament LLP ("WGP") as general counsel to the Trustee *nunc pro tunc* to February 2, 2019 (ECF No. 18, "Motion to Retain").[1] "*Nunc pro tunc* retentions" are common practice in bankruptcy matters largely resulting from the statutory framework for compensation of estate professionals set forth in sections 327 and 330 of the Bankruptcy Code ("Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure ("Rules"); that is, professionals seeking compensation from the estate, such as general counsel retained by a chapter 7 trustee, may not be compensated under section 330 unless they have been retained under section 327. Many courts have interpreted sections 327, 330 and Rule 2014 to mean that estate professionals may not be compensated for services rendered prior to the effective date of the court order approving that professional's retention. However, the delay between commencement of services to the estate, the filing of a motion for court approval and the entry of the order approving the retention may take several weeks.[2] In most cases it is

---

[1] The Motion to Retain does not actually contain a request for *nunc pro tunc* relief, but the Court presumes this was the Trustee's intention because the proposed order attached to the Motion to Retain contains such relief. Motion to Retain, ECF No. 18-3.

[2] For example, the undersigned judge requires motions to approve retention of professionals to be brought before the court by notice of motion and upon a hearing.

impractical and possibly detrimental to the estate for the professional to delay providing what may be critical services until entry of the order approving their retention. Courts have addressed this situation by, in specific cases, approving *nunc pro tunc* retentions so that the date of approval of the professional's retention dates back to the date of the trustee's application, or in some cases to the date of commencement of the professional's services. In the Motion to Retain before the Court, the Trustee asks this Court to approve his counsel's retention *nunc pro tunc* to February 2, 2019 – approximately eleven months prior to the filing of the Motion to Retain.

The Supreme Court's recent decision in *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano,* __ S.Ct. __, No. 18-921, 2020 WL 878715 (February 24, 2020), requires this Court to, *sua sponte*, review its practice of *nunc pro tunc* retentions. In *Acevedo* the Court held that "[f]ederal courts may issue *nunc pro tunc* orders, or 'now for then' orders, . . .  to 'reflect [] the reality' of what has already occurred . . . . 'Such a decree presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court.' . . . Put colorfully, '[n]unc pro tunc orders are not some Orwellian vehicle for revisionist history – creating 'facts' that never occurred in fact.'" *Id.* at *3-4 (citations omitted). The holding in *Acevedo* raises serious questions about the use of *nunc pro tunc* relief for purposes other than to reflect an event that has already occurred but is not accurately reflected in the court's records. This Court's reading of *Acevedo* is that utilizing *nunc pro tunc* orders to approve the retention of estate professionals retroactive to some date prior to the actual date of court approval is inappropriate.

It is this Court's determination, however, that retroactive approval of the retention of an estate professional, whether it be *nunc pro tunc, post-facto* or any similar nomenclature, is not mandated under the Code or Rules. The Court finds that neither the Code nor the Rules preclude

an award of "reasonable compensation" or reimbursement for "actual, necessary expenses" pursuant to section 330 for services rendered prior to an order approving retention of the professional. The only temporal requirement in the Code and Rules is that a professional must have been retained pursuant to section 327 to successfully obtain a court award of compensation. Simply stated, a professional must be retained as required by the statute, but once having been retained, the bankruptcy court is free to compensate him for services rendered to the estate at any time, pre and post-court approval, in accordance with section 330 of the Code.

Based upon its analysis of the law this Court will no longer require or grant *nunc pro tunc* retentions. This does not mean that a professional providing services to the estate should delay in seeking court approval of retention. A late applicant runs the risk that court approval under section 327 may be withheld on the basis of disinterestedness or some other statutory infirmity, which will preclude compensation under section 330. In addition, it is this Court's view that late-filed retention applications should be subject to heightened scrutiny. Such applications must contain a detailed recitation of: the reasons for the delay in seeking court approval; the services already performed by the proposed professional, and the approximate amount billed up to the date of the application; the results obtained; and any future services that are contemplated. The late applicant runs the risk that court approval may be withheld on the basis that, in hindsight, the services performed by the proposed professional did not benefit the estate.

In the instant Motion to Retain, the Trustee's only stated basis for retaining WGP is to pursue the turnover of assets. The Court's review of the docket reveals that in the nearly one-year period prior to the filing of the Motion to Retain the Trustee and/or WGP filed a notice of discovery of assets, drafted and mailed two one-page letters seeking turnover of assets and information, filed a short motion to compel turnover, and examined the Debtor at a meeting of

the creditors pursuant to section 341. With the exception of the motion to compel turnover, these tasks are inherent functions of the Trustee. Even though the motion to compel turnover did, according to the Trustee, lead to the turnover of $1,579.28, without more information the Court is unable to determine whether the WGP's services were necessary or reasonable in light of the results obtained. For this and the reasons that follow, the Motion to Retain is denied without prejudice to further application consistent with this Decision.

## Factual Background and Procedural History

Hector Benitez (the "Debtor") filed a voluntary petition for relief under chapter 7 of the Code on January 10, 2019 (the "Petition"). Marc A. Pergament was appointed as the Interim chapter 7 Trustee. Motion to Retain ¶1. The first meeting of creditors pursuant to section 341(a) was held on February 12, 2019. Motion to Retain ¶4. The Trustee filed a notice of discovery of assets on February 21, 2019. The Debtor received a chapter 7 discharge on May 23, 2019.

On January 7, 2020, contemporaneously with the filing of the Motion to Retain, the Trustee filed a motion to compel the Debtor to turnover several documents, the sum of $1,579.28, and the Debtor's 2018 income tax refunds. (ECF No. 19, "Motion to Compel"). Attached to the Motion to Compel were two letters sent to the Debtor's attorney on February 21, 2019 and November 15, 2019 requesting various documents. A hearing was scheduled for March 11, 2020, but the Trustee withdrew the Motion to Compel on February 25, 2020, which he subsequently explained was due to the Debtor's ultimate compliance with his requests.

The Motion to Retain was filed nearly one year post-petition and eleven months after WGP commenced services to the estate. Thus, the Trustee seeks "*nunc pro tunc*" approval of WGP's retention to February 2, 2019. The Trustee alleges that WGP is needed to perform "such legal services for [the Trustee] which may be necessary herein, including pursuing the turnover

4

of assets." Motion to Retain ¶4. The Trustee represented that neither he nor WGP possess any interest adverse to the Debtor and that WGP qualified as a "disinterested person" under section 101 of the Code. *Id.* ¶7. A hearing on the Motion to Retain was held on March 11, 2020. For reasons stated at the hearing, the Court denied the Motion to Retain and advised that this written decision would follow.

## Discussion

*A. Applicable Provisions of the Code and Rules*

Section 327 provides, "[e]xcept as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. §327(a). Section 330 states in pertinent part:

> **(a)(1)** After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103--
> **(A)** reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
> **(B)** reimbursement          for          actual,          necessary          expenses.

11 U.S.C. §330(a).

Rule 2014 requires an applicant seeking to employ a professional under section 327 to state, among other things, "the name of the person *to be employed* . . . [and] the professional services *to be rendered* . . ." Fed. R. Bankr. P. 2014(a) (emphasis added).

5

B. *Neither the Code Nor the Rules Explicitly Require Court Approval of Retention Prior to the Rendering of Compensable Services by an Estate Professional*

Sections 327 and 330 collectively contain a single temporal limitation. To be eligible for an award of compensation from the estate, a professional's retention must first have been approved by the court pursuant to section 327. *See Lamie v. U.S. Tr.,* 540 U.S. 526, 538-39 (2004); 11 U.S.C. §330 (permits the court to award reasonable compensation to "a professional person employed under section 327 or 1103 of this title"). Assuming the court has approved the professional's retention under section 327 prior to an award of compensation, neither the Code nor the Rules state that the professional may not be compensated under section 330 for services provided to the estate prior to court approval of their retention. The Court recognizes that the retention language of Rule 2014 seems to contemplate prospective approval only, i.e., Rule 2014 refers to persons "to be employed" and the services "to be rendered." This has been interpreted by some courts as prohibiting compensation under section 330 for services rendered prior to court approval. *See, e.g.*, *In re McDaniels,* 86 B.R. 128, 129 (S.D. Ohio 1988). This Court does not agree with this interpretation. The better view is that the rule does not explicitly require prior approval for the rendered services to be subject to court review under section 330 and prior approval should not be read into the rule.[3] *See In re Jarvis,* 53 F.3d 416, 419-20 (1st Cir. 1995); *see also Matter of Singson,* 41 F.3d 316, 319 (7th Cir. 1994) (Section 327(a) "does not say that the approval must precede the engagement, and neither does Fed. R. Bankr. P. 2014(a), which implements §327(a). Prior approval is strongly preferred because it permits close supervision of

---

[3] *Cf. Cushman & Wakefield of Conn., Inc. v. Keren Ltd. P'ship (In re Keren Ltd. P'ship),* 189 F.3d 86, 88 (2d Cir. 1999) (affirming a denial of *nunc pro tunc* retention of professionals "for substantially the reasons stated by the district court"). The district court stated that §327(a) "anticipates that professionals who contemplate rendering service to estates first demonstrate relevant qualifications including competence, disinterest, efficiency, and document the need for service." *Cushman & Wakefield of Conn., Inc. v. Keren Ltd. P'ship (In re Keren Ltd. P'ship)*, 225 B.R. 303, 306 (S.D.N.Y. 1998). To "anticipate" does not mean the same thing as to "require."

the administration of an estate, wards off 'volunteers' attracted to the kitty, and avoids duplication of effort. Nothing in the statute forbids or even reproves belated authorization, however; timing is a matter of sound judicial administration rather than legislative command.") (internal citations omitted).

The Court recognizes there are policy concerns that support a requirement of court approval of the retention prior to rendering services to the estate. Prior approval permits the court to maintain control of costs, prevents volunteerism, and serves as a gate-keeper for potentially non-disinterested parties. *See, e.g.*, *Farinash v. Vergos (In re Aultman Enterprises)*, 264 B.R. 485, 490 (E.D. Tenn. 2001) ("Were the law otherwise, there would be no limit to the burden which might be placed upon an estate if attorneys for the bankrupt or individual creditors could, by doing work which it is not their duty to do, by assisting the trustee, without an order of court allowing their special employment, burden the estate with the added cost of performing work which it is the duty of others to perform . . . Because professionals employed by the estate must 'not hold or represent an interest adverse to the estate,' and must be 'disinterested persons,' the requirement of prior court approval also prevents unscrupulous individuals from taking advantage of the bankruptcy process to advance their own self-interest."); *In re Met-L-Wood Corp.*, 103 B.R. 972, 975 (Bankr. N.D. Ill. 1989), *aff'd*, 115 B.R. 133 (N.D. Ill. 1990); *McDaniels,* 86 B.R. at 129.

This Court believes that the retention and compensation approval processes built into sections 327 and 330 address these policy concerns.  First, volunteers and non-disinterested professionals run the risk that they will fail to obtain court approval of their employment under section 327, and thus they will be unable to seek compensation under section 330.[4] *See Land*

---

[4]     Additionally, pursuant to section 328, ". . . the court may deny allowance of compensation for services and reimbursement of expenses of a professional employed under section 327 or 1103 of this title

*West, Inc. v. Coldwell Banker Commercial Grp, Inc., (In re Haley),* 950 F.2d 588, 590 (9th Cir. 1991). *See discussion, infra,* part D. Second, assuming the professional is ultimately retained, that professional's fees are still subject to court approval under section 330 which requires that the compensation be "reasonable" and "for actual, necessary services rendered" or "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Any concerns about the value of services rendered to the estate will be addressed by the Court upon the estate professional's fee application.

*C. The Second Circuit's 'Per Se' Rule*

Many courts and commentators have stated that the Second Circuit has adopted a *per se* rule that "denies compensation to a professional who renders pre-appointment services to a debtor." *In re Household Merit, Inc.,* No. 94-62969 (SDG), 1995 WL 936707, at *2 (Bankr. N.D.N.Y. 1995); *see Matter of Futuronics Corp.,* 655 F.2d 463, 469 (2d Cir. 1981) ("It has long been the practice in [the Second Circuit] to deny compensation to counsel who fail to comply with the disclosure provisions [of the Bankruptcy laws]"); *In re Progress Lektro Shave Corp.,* 117 F.2d 602 (2d Cir. 1941); *In re Eureka Upholstering Co.,* 48 F.2d 95 (2d Cir. 1931).

In *In re Piecuil*, 145 B.R. 777 (Bankr. W.D.N.Y. 1992), the bankruptcy court reviewed the Second Circuit cases commonly cited for this so-called 'per se' rule and determined that "the harshness of the rule has been exaggerated. *Piecuil*, 145 B.R. at 778-79. The bankruptcy court gleaned that "[c]ommon, then, to all key decisions of the Second Circuit are the facts that they involved applications by attorneys (as opposed to accountants, auctioneers, appraisers, or other

---

if . . . such person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." 11 U.S.C. § 328(c).

professionals) who represented or were affiliated with other interests in the case apart from representation of the estate" and that

> [i]n no instance that can be found has the Circuit adopted a rigid view of the prior approval requirement in connection with any professional whose only involvement in the case, as attorney or otherwise, was to perform services for the estate which the professional thought would be compensable from the estate and as to which the professional could look to no-one but the estate (for compensation)

*Id.* at 781. Similarly, he found that "most courts that have recited a need for strict adherence to the requirement of prior court approval have typically done so only in dictum or in a context in which either (1) they would have denied approval of the employment had application been made prior to the rendering of services, or (2) the applicant consciously avoided the requirement of prior approval." *Id.* at 779.

This Court similarly finds that the reports of the holdings in the line of Second Circuit cases, including *Futuronics, Lektro,* and *Eureka*, have been misinterpreted to mean that a professional's services rendered pre-court approval are not compensable. For example, *Futuronics* involved the denial of a law firm's application for compensation for services as general counsel, where the firm "exhibited a total and callous disregard for the disclosure provisions of [former Bankruptcy Rule] 215." *Futuronics*, 655 F.2d at 469. The Circuit held that "the violation of the bankruptcy rules' prohibition against illicit fee-sharing involved in this case warranted no less than a total denial of compensation." *Id.* at 470. In *Lektro,* the debtor's attorney sought compensation for rendering services that were "of a character to be rendered by an attorney for the trustee" even though the attorney had not been appointed to serve in such a capacity. *Lektro,* 117 F.2d at 603-04. In addition to failing to obtain a court appointment, the

9

attorney would not have been eligible for appointment because he was not "disinterested." *Id.* at 604.

In *Eureka*, a receiver, later appointed as trustee, availed himself of creditors' attorney's services without applying to the court for the appointment of an attorney. *Eureka*, 48 F.2d at 95. The Circuit affirmed an award of $100 for the "routine" filing of the involuntary petition and denied compensation for other requested services, including arranging the sale of assets, hiring truckmen, and safeguarding property, among other similar services, as they were duties of the trustee, not legal services. *Id.* at 95-96. The Circuit found that further recovery was precluded because the firm either acted on an unauthorized retainer in violation of court procedures or usurped the duties of a receiver without a court order displacing the receiver's duties. *Id.* As noted in *Piecuil*, in these cases, "the policy of preventing the estate's incurring of expense for unnecessary legal services would have required disapproval of the application had prior approval been sought." *Piecuil*, 145 B.R. at 779.

Accordingly, this Court finds that there is no *per se* prohibition, in the statute or precedential caselaw, against awarding reasonable compensation to an estate professional for actual and necessary services rendered to the estate prior to the date of court approval of retention. As a result, in this Court's view, *nunc pro tunc* or retroactive retention is not necessary.

### D. Late-filed Motions to Retain Are Subject to Heightened Standard of Review

Although a professional does not violate the Code or Rules by commencing services prior to court approval, late applicants should understand the consequences of their delay. Section 327(a) requires that a professional employed by a trustee "(1) hold no interest adverse to the estate" and "(2) "be a disinterested person[ ]." *Pryor v. Pontisakos (In re Vouzianas),* 259 F.3d

103, 107 (2d Cir. 2001); *see also* 11 U.S.C. § 101(14) (defining "disinterested person"), and 11 U.S.C. § 101(41) (defining "person"). "When evaluating proposed retention, a bankruptcy court should exercise its discretionary powers over the approval of professionals in a manner which takes into account the particular facts and circumstances surrounding each case and the proposed retention before making a decision." *Vouzianas,* 259 F.3d at 107 (internal quotations and citations omitted). A court should consider "the protection of the interests of the bankruptcy estate and its creditors, and the efficient, expeditious, and economical resolution of the bankruptcy proceeding." *Id.* (internal quotations and citations omitted).

The longer an estate professional waits to seek court approval of its retention, the more the "particular facts and circumstances surrounding [the] case" develop, which means the Court may broaden its analysis to include hindsight consideration of the services already rendered and the professionals who rendered those services. *Id.* Seeking court approval after-the-fact subjects the professional to the possibility that approval of retention may be denied considering the lack of benefit to the estate thus precluding any possibility of compensation under section 330. Where services rendered ultimately provide little or no benefit to the estate, court approval obtained *prior to* the rendering of the services would at least allow the professional to seek compensation and prove the compensation was reasonable and necessary in light of the facts and circumstances of the case.

*E. The Trustee's Motion to Retain WGP*

The Trustee's delay of nearly a full year in filing the Motion to Retain permits this Court to review the work already performed and determine whether the retention of WGP should be approved considering the facts of this case. In this case thus far the Trustee and/or WGP have filed a motion to compel, a notice of discovery of assets, drafted and mailed two one-page letters,

11

and examined the Debtor at a section 341 meeting. With the exception of the Motion to Compel, these tasks are inherent to the Trustee's duties in a bankruptcy of "collect[ing] and reduc[ing] to money the property of the estate" and "investigat[ing] the financial affairs of the debtor." 11 U.S.C. § 704.

Without more information, the Court cannot evaluate whether it was necessary to retain legal counsel, whether the delay in seeking retention of legal counsel was reasonable and whether, in retrospect, retention of legal counsel provided any net benefit to the estate. Based on the limited information contained in the Motion to Retain, and given the "particular facts and circumstances surrounding [the] case and the proposed retention," *Vouzianas,* 259 F.3d at 107, the Court finds there is no basis to retain WGP at this time.

## Conclusion

For all these reasons, the Motion to Retain is denied without prejudice. An Order consistent with this Decision will be entered forthwith.



Dated: Central Islip, New York  
      March 13, 2020

_____  
**Robert E. Grossman**  
**United States Bankruptcy Judge**